JASON J. BACH, ESQ.
Nevada Bar No. 7984
**THE BACH LAW FIRM, LLC**
7881 W. Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorney for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| THOMAS MCCRACKEN and CE MOBILE INSTALLS, LTD, <br><br> Plaintiffs, <br><br> v. <br><br> REGIONAL TRANSPORTATION COMMISSION of SOUTHERN NEVADA; M.J. MAYNARD and CARL SCARBROUGH, <br><br> Defendants. | Case No. <br><br> **JURY DEMANDED** |

**COMPLAINT**

Plaintiff, THOMAS MCCRACKEN and CE MOBILE INSTALLS, LTD., by and through counsel, The Bach Law Firm, LLC, complains of Defendants as follows:

**NATURE OF THE CASE**

1. This case is bought by independent contractor, Thomas McCracken and CE Mobile Installs, Ltd. (hereinafter referred to as "Plaintiffs") against Regional Transportation Commission of Southern Nevada (hereinafter referred to as "RTC"), and M.J. Maynard and Carl Scarbrough, officers of RTC, in their individual and official capacities, as a result of RTC's unlawful termination of Plaintiffs' services after Plaintiff McCracken made a complaint regarding the manner in which his invoices were being handled by RTC over the preceding few months.

2. Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 as a result of RTC and its officials retaliation and termination of Plaintiffs' services in violation of Plaintiffs' First Amendment rights.

**JURISDICTION AND VENUE**

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 1343(a)(3) and (4), as this action seeks redress for the violation of plaintiff's constitutional and civil rights.

4. Supplemental jurisdiction is invoked over Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367, as the claims arise out of the same case or controversy as Plaintiffs' federal claims.

5. Venue is proper in this jurisdictional district pursuant to 28 U.S.C. § 1391 because the acts and/or omissions giving rise to the claims herein alleged took place in this District.

**PARTIES**

6. Plaintiff, Thomas McCracken, is a citizen of the United States and is and was a resident of Las Vegas, Nevada at all times relevant herein.

7. Plaintiff, CE Mobile Installs, Ltd., is a Nevada corporation with its principal place of business in Clark County, Nevada.

8. Defendant, Regional Transportation Commission of Southern Nevada (hereinafter referred to as "RTC"), is a political subdivision of the State of Nevada charged with providing public transportation services, including bus services throughout southern Nevada and Clark County.

9. Defendant, M.J. Maynard, is believed to be a resident of the State of Nevada. At all times relevant herein, Defendant was the Deputy General Manager of RTC.

10. Defendant, Carl Scarbrough, is believed to be a resident of the State of Nevada. At

all times relevant herein, Defendant was the RTC Director of Transit Advertising, Amenities, and Technical Equipment.

11.     At all times relevant hereto, Defendants were the agents and/or employees and/or co-adventurers and/or partners and/or alter egos and/or predecessors and/or successors of their Co-Defendants, and in doing the acts and omissions alleged herein were acting in the course and scope of such agency, employment, co-adventure, partnership, or alter ego and with the permission, consent, and encouragement of their Co-Defendants.

## FACTUAL ALLEGATIONS

12.     Plaintiffs have been contracting with RTC since July 2004 to install, maintain and service the security cameras and computer aided dispatch equipment on RTC buses.

13.     Plaintiff's company supplied both installation and maintenance, as well as facilitated the purchase of some of the equipment itself, as Plaintiff was an authorized dealer for Safety Vision products used in many of the installations. When Plaintiff sold Safety Vision parts as a dealer, he presented his own purchase order plus installation package deal directly on invoice to RTC.

14.     Plaintiff also worked directly with Safety Vision performing installation and servicing for Safety Vision's direct contracts with RTC.  Plaintiff worked on RTC site to meet this obligation on the behalf of Safety Vision.

15.     Plaintiffs' work ensured RTC's equipment was within warranty compliance, as only certified CAD-AVL installers can work on certain equipment per manufacturer warranties.

16.     From July 2004 to February 16, 2016, Plaintiffs worked directly with RTC Manager of General Equipment, who said Plaintiffs are "The best at what they do" as installers.

17.     Each yearly budget for equipment and services rendered by Plaintiffs was submitted and approved by the RTC Board of Commissioners in April prior to the start of the fiscal year.

18. For this upcoming year, RTC already approved the budget Plaintiffs submitted; a significant amount of business was slated to go to Plaintiffs for the upcoming fiscal year.

19. In accordance with the yearly budget, Plaintiffs provided RTC detailed invoiced purchase orders or invoices which included scope of work, products, installation, maintenance, warranties, and other details was customary and appropriate for each individual transaction Plaintiffs completed.

20. This course of dealing continued over the course of 12 years. From July 2004, Plaintiffs completed all projects on time and without issue. From July 2004 to February 1, 2016, RTC timely paid all invoices to Plaintiffs without issue.

21. On February 16, 2016, the long-standing manager notified the Plaintiff that he was being placed on administrative leave and that Plaintiff's new contact at RTC would be Defendant, Carl Scarbrough.

22. From the time Scarbrough took over contact with Plaintiff, RTC was constantly late in paying Plaintiffs' invoices.

23. Plaintiff met with Scarbrough on several occasions in February 2016 and March 2016. Each time they met, they discussed past due invoices RTC had not paid. On each occasion, Scarbrough falsely informed Plaintiff that the checks were being cut and that payment would be made on the next check run.

24. When Plaintiff learned that Scarbrough was making false representations regarding invoices, he considered sending the bills to collection. But after considering the 12-year relationship between the company and RTC, he emailed Scarborough's supervisor, M.J. Maynard, regarding the issue.

25. Plaintiff then met with Defendant, M.J. Maynard on March 28, 2016, in a meeting

arranged by RTC to purportedly to rectify RTC's nonpayment. At that meeting, Maynard informed Plaintiff that Scarbrough's department had been managed poorly by his predecessor and that she was embarrassed about the way he ran the department.

26. Despite prior approvals for the work, she demanded Plaintiff amend the old purchase orders and/or invoices to provide additional information. This was the first time in 12 years contracting with RTC that Plaintiff was told the purchase orders or invoices did not contain enough information.

27. Maynard told Plaintiff that she would advise what additional information was needed for the purchase orders and invoices but, to date, nobody has ever advised Plaintiff of the new information requirements.

28. On or about early April 2016, Scarbrough and Maynard met with an agent at Safety Vision, where they discussed their dissatisfaction that Plaintiffs went directly to superiors to have its outstanding invoices paid. One of the pair expressed they "Don't see him in the future". When pressed whether the decision to get rid of Plaintiff was because of him speaking out about the invoices, Scarbrough said, "That was the straw".

29. On April 13, 2016, Plaintiff was informed by the agent at Safety Vision – the manufacturer from whom he buys system components – that Maynard was extremely angry at Plaintiff for going over her and Scarbrough's head and speaking to her supervisors about the unpaid invoices.

30. On May 2, 2016, Scarbrough and Maynard retaliated against Plaintiffs for criticizing the manner in which he handled the invoice payments by terminating their services with RTC.

///

# FIRST CAUSE OF ACTION

*CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983 (MONELL CLAIM)*
*(Against Regional Transportation Commission of Southern Nevada)*

31. Plaintiffs hereby incorporate all of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

32. Defendants' actions resulted from, and were taken, pursuant to a *de facto* policy of Defendant RTC, which is implemented by the Managers, Directors, Board of Commissioners, and other employees of the said Defendant, all acting under the color of law, who chose to violate Plaintiff's constitutional rights, without rightful authority of law.

33. The existence of the *de facto* policies described herein has been known to supervisory and policy making officers and officials of said Defendant for a substantial period of time.

34. Despite their knowledge of the illegal policies, practices, and behaviors, supervisory and policy-making officers and officials of Defendant RTC have not taken steps to meaningfully investigate said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in the said practices and behaviors, have not effectively trained Managers, Directors, Board of Commissioners, and other employees with regard to the proper constitutional and statutory limits on the exercise of their authority, and have instead sanctioned the policies and the practices described herein.

35. The decisions of the Defendants to remain indifferent to retaliatory acts against Plaintiffs increase the danger that Plaintiffs will be exposed to further retaliation by their policy makers, including Defendants Scarbrough and Maynard.

36. Plaintiffs have a clearly established right to be free from persecution in response to properly asserting first amendment rights to speak up about a government officials or actions, as Plaintiff was doing when he approached Tina Quigley to rectify RTC's nonpayment.

37. That the above-described actions and omissions by Defendants were deliberate and intentional and have resulted in violations of Plaintiff's rights to equal protection and due process, all in violation of the Fourteenth Amendment to the United States Constitution.

38. That by reason of the aforesaid actions, Defendants' actions exhibit deliberate indifference to and/or reckless disregard for the constitutional rights of Plaintiffs and other similarly situated independent contractors, all in violation of its constitutional rights, and as a direct and proximate result thereof, Plaintiffs sustained damages in an amount in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

39. The acts, conduct and behavior of each of the individual Defendants was performed knowingly, intentionally, oppressively, and maliciously, by reason of which Plaintiffs are entitled to punitive damages in a sum in excess of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00).

40. It has been necessary for Plaintiffs to obtain the services of an attorney to prosecute this action, and he is entitled to an award of attorney's fees and costs of suit incurred herein.

**SECOND CAUSE OF ACTION**

***CIVIL RIGHTS VIOLATION, FIRST AMENDMENT RETALIATION CLAIM***
***(Against All Defendants)***

41. Plaintiffs hereby incorporate all of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

42. Defendants, acting under color of state law, deprived Plaintiffs of rights secured by the Constitution and the laws of the United States by arbitrarily terminating Plaintiffs' prior-approved budget and proposed work with RTC.

43. Defendants engaged in the foregoing act of retaliation against Plaintiffs on the basis of Plaintiff's lawful exercise of his right to freedom of speech in addressing matters of public concern, as guaranteed by the First Amendment to the United States Constitution. In particular,

the statements made by Plaintiff to defendants, Tina Quigley, and others regarding the mishandling of the payment of Plaintiffs' invoices and false statements made by state officials regarding the payment of his invoices constitute matters of public concern.

44. Defendants retaliated against Plaintiff because Plaintiff engaged in federally protected activity, specifically, speaking to management about RTC's non-payment, which is a violation of federal law.

45. Defendants, in perpetrating the retaliatory acts alleged herein, engaged in a pattern and practice and acted pursuant to a policy of retaliating against independent contractors for the lawful exercise of their free speech rights on matters of public concern. Allowing such retaliation would chill corporations, entities, and/or individuals from approaching the government for rightful payment in the future; and such violation of federal law and the resulting effect cannot be allowed.

46. Defendants' conduct, as described above, is a violation of Plaintiff's civil rights in violation of 42 U.S.C. § 1983.

47. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and continue to suffer loss of earnings, loss of reputation and future advancement, mental and emotional distress all to Plaintiffs' damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

48. In doing the acts alleged herein, Defendants knew that their actions were unlawful but nonetheless committed such acts maliciously, fraudulently, oppressively, and with wrongful intention of injuring Plaintiffs' rights thus entitling Plaintiffs to recover punitive damages from the individual defendants.

///

///

### THIRD CAUSE OF ACTION

**BREACH OF CONTRACT**
(*Against All Defendants*)

49. Plaintiffs hereby incorporate all of the allegations set forth in the foregoing paragraphs as though fully set forth herein.

50. Plaintiffs and Defendants engaged in numerous purchase order and invoice-based contracts for the purchase, installation, warranty, and maintenance of system components for Defendants fleet of vehicles. Plaintiffs and Defendants also engaged in yearly budget proposals for the purchase, installation, warranty, and maintenance of system components for Defendants for the following fiscal year; this upcoming fiscal year's work has already been approved.

51. Plaintiffs performed under the contractual terms of the budgetary proposals and individual purchase order contracts and invoices by ordering, installing, warrantying, maintaining, and servicing system components for Defendants.

52. Defendants breached its purchase order and invoice based contracts with Plaintiff when Defendants ceased remitting payment for equipment and services already delivered and completed. Further, Defendants breached its budget approval contract with Plaintiffs when Defendants told Plaintiffs all contractual obligations between the parties were immediately terminated.

53. Defendants could not point Plaintiff to demonstrable problems in Plaintiffs purchase orders and invoices or other justifiable reasons for failure to meet their contractual obligations to pay.

54. As a direct and proximate result of Defendants' unlawful breach, Plaintiffs have suffered and continue to suffer loss of earnings, loss of reputation and future advancement, mental and emotional distress all to Plaintiffs' damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

## FOURTH CAUSE OF ACTION

### *BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING*
*(Against All Defendants)*

55. Nevada law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of Nevada.

56. From July 2004 to May 2, 2016, Plaintiffs and Defendants engaged in numerous purchase order and invoice-based contracts for the purchase, installation, warranty, and maintenance of system components for Defendants fleet of vehicles.  From July 2004 through about February 2016, Plaintiff engaged in yearly budget proposals for the purchase, installation, warranty, and maintenance of system components for Defendants for the following fiscal year. Each stated year, including the next fiscal year, has already been approved by the Defendants Board of Commissioners to award work to Plaintiffs, forming a contract between Defendants and Plaintiff.

57. Plaintiffs justifiably expected to receive certain benefits consistent with the spirit of the agreements it has entered into with Defendants and based on a decade's course of dealing with Defendants. Plaintiffs adjusted business and personal decisions in relation to Defendants' contractual promises.  Plaintiffs met its side of contractual obligations.

58. Defendants breached the covenant of good faith and fair dealing by abruptly terminating the ongoing relationship and budgetary provisions already contracted to Defendant. Defendants bad faith motivation for terminating the contracts were deliberate and in retaliation for Plaintiffs assertion of his First Amendment right to speaking to speak up about the Defendant government's non-payment of purchase orders and invoices.

59. As a direct and proximate result of Defendants' unlawful breach, Plaintiffs have suffered and continue to suffer loss of earnings, loss of reputation and future advancement, mental

and emotional distress all to Plaintiffs' damages in an amount to be determined at trial but in excess of the jurisdictional threshold of this Court.

## FIFTH CAUSE OF ACTION

### *TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS*
### *(Against All Defendants)*

60. Plaintiffs were engaged in an economic relationship with Safety Vision that was substantially likely to result in economic benefits to Plaintiffs that was beyond Plaintiffs purchasing Safety Vision's products for use in Plaintiffs business with RTC.

61. Defendants knew of Plaintiff's economic relationship with Safety Vision, whereby Plaintiffs acted as an authorized dealer for certain parts Safety Vision supplies to RTC and Plaintiff contracted directly with Safety Vision as an installer and servicer for several contracts directly between Safety Vision and RTC.

62. Defendants engaged in wrongful conduct through their tortious interference with Plaintiffs contractual relationships with Safety Vision by illegally terminating all business with Plaintiffs.

63. Defendants wrongful conduct disrupted Plaintiffs' economic relationship with Safety Vision, as Safety Vision is unable to contract Plaintiffs to go onsite to any RTC property to perform retrofitting installations or maintain existing equipment.  Moreover, Safety Vision is unsure whether RTC will object to Plaintiffs work for Safety Vision for new builds if the new builds are held on or off RTC properties, which will decrease the likelihood that Safety Vision will work with Plaintiffs in the future.

64. Defendants wrongful conduct was a substantial factor in causing Plaintiffs to suffer damage in an amount to be established by appropriate proof at trial.

65. Defendants acted with malice, oppression, and fraud when Defendants intentionally and in conscious disregard of Plaintiffs' rights, removed Plaintiffs company as an intermediary,

installer and servicer of Safety Vision equipment and deprived Plaintiff of its rightful proceeds from those agreements and the prospective economic benefits Plaintiff likely would have enjoyed beyond those provided for in those agreements. Thus, Plaintiffs are entitled to recover punitive damages from the individual defendants.

WHEREFORE, Plaintiffs pray for relief as follows:

1. For general and compensatory damages in an amount to be determined at trial;

2. For punitive damages against the individual defendants in an amount to be determined at trial;

3. Pre-judgment and post-judgment interest, as provided by law;

4. Costs of action incurred herein, including expert fees;

5. Attorney's fees, including fees pursuant to 42 U.S.C. § 1988 and other applicable statutes;

6. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated this 12th day of August, 2016.

Respectfully Submitted,
**THE BACH LAW FIRM, LLC**

By____*/s/ Jason J. Bach*____
JASON J. BACH, ESQ.
Nevada Bar No. 7984
7881 W. Charleston Blvd., Suite 165
Las Vegas, Nevada 89117
Telephone: (702) 925-8787
Facsimile: (702) 925-8788
Email: jbach@bachlawfirm.com
*Attorney for Plaintiffs*